IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **MARK MCKAY,** | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| **TED KRIMMEL et al.,** | : | NO. 18-2112 |
| *Defendants*. | : | |

# **M E M O R A N D U M**

PRATTER, J.                                                                                                                        MARCH 7, 2019

*Pro se* plaintiff Mark McKay brings claims under 42 U.S.C. § 1983 against Ted Krimmel, Brian Hessenthaler, Christopher Grayo, and Joseph Gansky. These claims arise from an allegedly unlawful search and seizure conducted by Bensalem Township Police Officers Grayo and Gansky at a residence in Trevose, Pennsylvania under the alleged supervision of Lower South Hampton Township Chief of Police Ted Krimmel. In June 2018, the Court referred this case to the Prisoner Civil Rights Panel and placed it in suspense. Nevertheless, from July 2018 through February 2019, the parties filed several motions, including: (1) Mr. McKay's motions requesting default judgment; (2) Chief Krimmel's motion to dismiss; and, most recently (3) Mr. McKay's motion asking the Court to withdraw the case from suspense and allow him to proceed *pro se*.

The Court is now prepared to remove this case from suspense and resolve all pending motions. As discussed below, the Court will deny Mr. McKay's requests for default judgment because all deadlines were stayed while the case was in suspense, making any effort to take a default ineffective. The Court will also grant Chief Krimmel's motion to dismiss in part and deny it in part because although Mr. McKay's Fourth Amendment unlawful search and false arrest claims against Chief Krimmel are barred by the favorable termination rule set forth in *Heck v.*

1

*Humphrey*, 512 U.S. 477 (1994), Mr. McKay's failure to intervene claim against Chief Krimmel is not. Finally, the Court will grant Mr. McKay's request to remove this case from suspense and permit him to proceed *pro se*.

## BACKGROUND & PROCEDURAL HISTORY

### I. Mr. McKay's Complaint

Mr. McKay's claims arise from an allegedly unlawful search and seizure conducted by Bensalem Township Police Officers Grayo and Gansky at a residence in Trevose, Pennsylvania. Specifically, Mr. McKay claims that Officers Grayo and Gansky threw him to the ground in the front yard, searched the house without a warrant, inappropriately touched his "private area" while conducting an unauthorized body cavity search, arrested him, and unlawfully held him for hours without filing an affidavit of probable cause. Mr. McKay also claims that Officers Grayo and Gansky charged him with crimes he did not commit and threatened that if he did not plead guilty, they would charge his son for crimes relating to the drug paraphernalia found at the scene.

Mr. McKay claims that the Lower South Hampton Township Chief of Police—Chief Krimmel—was responsible for supervising the scene, and he alleges that Chief Krimmel authorized and approved police misconduct, could have prevented the violations of his constitutional rights, and used illegal methods of obtaining and arresting him. Finally, Mr. McKay claims that Mr. Hessenthaler—identified only as the "Chief Operator"—knew that unconstitutional acts were occurring and failed to train employees properly. Mr. McKay states that these acts caused his incarceration and the loss of his car and other belongings, and he claims that he and his son both suffer from depression and anxiety as a result of the defendants' actions.

Following these events, Mr. McKay pleaded guilty to: (1) two counts of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance; (2) one count of criminal use of a communication facility; (3) one count of intentionally possessing a controlled

or counterfeit substance; and (4) one count of use or possession of drug paraphernalia. Mr. McKay now seeks seeks $1,000,000 in damages, his release from custody, and the termination of all of the defendants from their positions.

## II. The Court Referred this Case to the Prisoner Civil Rights Panel and Placed It in Suspense

In June 2018, the Court granted Mr. McKay's motion to appoint counsel to the extent the Court placed this case on the Prisoner Civil Rights Panel for consideration.[1] *See* Doc. No. 7. In the same order, the Court placed this case in suspense status, terminating all deadlines.

## III. Mr. McKay's Motions for Default Judgment

In July 2018, despite the case's suspense status, Mr. McKay filed a "Motion for Rule 4," arguing that the defendants' failure to respond to his complaint should result in a default judgment. Doc. No. 20. He renewed his request for default judgment in August 2018—this time in the form of a motion for summary judgment. Doc. No. 29. In response, Mr. Hessenthaler noted that this case had been in suspense since June 4, 2018. Doc. No. 30.

## IV. Chief Krimmel's Motion to Dismiss

Also in August 2018, Chief Krimmel filed a motion to dismiss the claims against him. He argues that Mr. McKay's § 1983 claims are barred by the favorable termination rule set forth by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). In response, Mr. McKay filed a "Motion: Opposition" (Doc. No. 31) and a response in opposition to Chief Krimmel's motion to

---

[1] Although litigants in civil actions do not have a constitutional or statutory right to appointed counsel, the Eastern District of Pennsylvania maintains a Prisoner Civil Rights Panel in order to possibly facilitate the involvement of counsel in cases initiated by *pro se* prisoners raising constitutional and civil rights claims. Courts in this district may refer a *pro se* plaintiff's prisoner civil rights case to the panel for consideration by a group of attorneys who may—if they choose—take the case. However, presentment of a case by the Prisoner Civil Rights Panel does not assure the interest or appointment of counsel. Rather—as occurred here—it remains possible that no counsel will be appointed.

dismiss (Doc. No. 33). Both documents set out Mr. McKay's arguments for why the Court should deny Chief Krimmel's motion to dismiss.[2] Therefore, the Court will treat Mr. McKay's "Motion: Opposition" as a response in opposition to the motion to dismiss.

**V.     Mr. McKay's Motion to Withdraw from Suspense and to Proceed *Pro Se***

In October 2018, pursuant to the Court's procedures, the Court's *Pro Se* Litigation Law Clerk sent Mr. McKay a notice informing him that the case had been listed on the "extranet" site for the Prisoner Civil Rights Panel for four months without any attorneys volunteering to take the case. Doc. No. 35. Thereafter, Mr. McKay filed another motion for appointment of counsel. Doc. No. 36. The Court construed this motion as a request to remain on the panel, and the Court issued an order notifying Mr. McKay that his case would remain on the panel for continued consideration. Doc. No. 40.

Subsequently, Mr. McKay filed a motion titled "Motion Pursuant to Fed. R. Civ. P. Rule 60(B) Motion Pursuant to Proceed Pro Se." Doc. No. 41. Although Mr. McKay asked for relief pursuant to Fed. R. Civ. P. 60(b), he did not specify from which of the Court's orders he was seeking relief. Moreover, although the phrase "Motion Pursuant to Proceed Pro Se" was part of this motion's title, Mr. McKay did not ask the Court to remove this case from the Panel or remove it from suspense. Therefore, the Court denied the motion and instructed Mr. McKay that if he wanted to proceed *pro se* instead of waiting for the appointment of counsel, he should inform the Court of his desire to do so in a clear and concise manner. Doc. No. 45.

---

[2]     In these opposition briefs, Mr. McKay cites *Younger v. Harris*, 401 U.S. 37 (1971), and other cases discussing *Younger* abstention. *See* Doc. Nos. 31 and 33. Although the Court can understand Mr. McKay's confusion, it notes that *Younger* abstention—which ordinarily forbids declaratory judgment or injunctive relief with respect to the validity of a state statute when a criminal proceeding under the statute has been commenced—and the *Heck* favorable termination rule are separate legal doctrines.

Thereafter, in January 2019, Mr. McKay filed a motion titled "Motion to Object to Defendant[s'] Request for Dismissal of a Jury Trial." Among other things, Mr. McKay stated that the defendants have been filing motions to dismiss on frivolous grounds and that he is willing to proceed *pro se* if a jury trial date is set. Doc. No. 46. Mr. McKay filed a nearly identical motion with the same title on February 14, 2019. Doc. No. 49. And on the same day, Mr. McKay filed a motion titled "Motion to Withdraw from Suspense, & to Proceed Pro Se," requesting—as the title suggests—that the Court take this case out of suspense and expressing his desire to proceed *pro se*. Doc. No. 50. The Court construes Mr. McKay's motions to "Object to Defendant[s'] Request for Dismissal of a Jury Trial" as additional responses in opposition to Chief Krimmel's motion to dismiss. The Court construes Mr. McKay's "Motion to Withdraw from Suspense, & to Proceed Pro Se" as a motion to remove this case from suspense.

## DISCUSSION

### I. Mr. McKay's Requests for Default Judgment

First, the Court will deny Mr. McKay's motions seeking default judgment as a result of the defendants' "failure" to answer the complaint. These motions include: (1) Mr. McKay's "Motion for Rule 4" (Doc. No. 20); and (2) Mr. McKay's Motion for Summary Judgment (Doc. No. 29). As discussed *supra*, this case was placed in civil suspense status on June 4, 2018. Doc. No. 7. Therefore, all deadlines in this case—including the defendants' obligation to answer the complaint—were stayed. As other courts in this district have done, the Court will set a responsive pleading deadline after removing this case from suspense. *See Maaco Franchising, Inc. v. Gardner*, Civ. No. 11-3087, 2014 U.S. Dist. LEXIS 37239, at *1–2 (E.D. Pa. Mar. 21, 2014) (giving the defendants three weeks to respond to the complaint after removing the case from suspense status).

**II.     Chief Krimmel's Motion to Dismiss**

Next, the Court will grant Chief Krimmel's motion to dismiss in part and deny it in part. Chief Krimmel argues that Mr. McKay's § 1983 claims against him are barred by the favorable termination rule set forth in *Heck*. Because Mr. McKay's Fourth Amendment claims based on unlawful search and false arrest necessarily implicate the validity of Mr. McKay's guilty plea, the Court will dismiss those claims. However, Mr. McKay's complaint—viewed in a liberal light—can also be interpreted as asserting excessive force claims against Officers Grayo and Gansky, and relatedly, can be interpreted as asserting a failure to intervene claim against Chief Krimmel. Because *Heck* does not generally bar excessive force or failure to intervene claims that are connected to excessive force claims, the Court will not dismiss Mr. McKay's failure to intervene claim against Chief Krimmel.

*A. Legal Standard*

At the outset, the Court notes that Mr. McKay's *pro se* pleading must be "liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola,* 839 F. Supp. 332, 334 (E.D. Pa. 1993). To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v.*

*White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions. *Id.* at 1197. Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

### B. *The Favorable Termination Rule*

In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–487. The Third Circuit Court of Appeals has interpreted *Heck* to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained

7

unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005).

*Heck* does not bar all Fourth Amendment claims. *Heck*, 512 U.S. at 487 n. 7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.") (citations omitted). For example, *Heck* does not bar a claim where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question. *Rosembert v. Borough of East Landsowne*, 14 F. Supp. 3d 631, 640 (E.D. Pa. Apr. 9, 2014) (citation omitted). Similarly, claims for excessive force generally do not call a conviction into question. *Id.* (citing *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997)).

However, courts in this circuit have barred Fourth Amendment claims for unlawful search and false arrest in cases where the plaintiff alleged that the unlawful search and false arrest *resulted* in his unlawful conviction or where evidence seized in an allegedly unlawful search or following an allegedly unlawful arrest is the only link between the plaintiff and his conviction. *See e.g. Keeling v. AG for the Commonwealth of Pa.*, 575 Fed. App'x 16, 18 (3d Cir. 2014) (barring the plaintiff's Fourth Amendment claims because he alleged that the illegal search and seizure resulted in his unlawful conviction); *Mosby v. O'Brie*, 532 Fed. App'x 84, 85 (3d Cir. 2013) (barring the plaintiff's Fourth Amendment claims relating to an alleged unlawful arrest because the plaintiff pleaded guilty to charges stemming from that arrest); *Usery v. Wood*, Civ. No. 14-6346, 2017 U.S. Dist. LEXIS 35325, at *18 (D.N.J. Mar. 13, 2017) (barring the plaintiff's Fourth Amendment claims because "the sole charge for which [he] was convicted was illegal possession of the allegedly illegally seized gun, [and] if [he] were to prevail on his § 1983 unreasonable search and

seizure claims, it would necessarily imply the invalidity of [his] underlying conviction"); *Rosembert*, 14 F. Supp. 3d at 640–41 (barring a plaintiff's Fourth Amendment claims because the only evidence supporting the charges to which the plaintiff pleaded guilty was acquired as a result of the alleged unlawful search and false arrest of the plaintiff).

### *C. Mr. McKay's Unlawful Search and False Arrest Claims Against Chief Krimmel Are Barred by Heck; But His Failure to Intervene Claim Is Not*

Mr. McKay claims that non-moving defendants Officers Grayo and Gansky threw him to the ground in the front yard, searched the house without a warrant, inappropriately touched his "private area" while conducting an unauthorized body cavity search, arrested him, and unlawfully held him for hours without filing an affidavit of probable cause. He further claims that Chief Krimmel was responsible for supervising the scene, and he alleges that Chief Krimmel authorized and approved police misconduct, could have prevented the violations of his constitutional rights, and used illegal methods of obtaining and arresting him.[3] As Chief Krimmel argues in his motion to dismiss, based on these alleged facts, Mr. McKay asserts what can best be identified as § 1983 claims for unlawful search and false arrest. In addition to the unlawful search and false arrest claims, however, the Court concludes that Mr. McKay also asserts what can be read as Fourth Amendment claims for excessive force against officers Grayo and Gansky and a related claim for failure to intervene against Chief Krimmel.[4]

---

[3] In Chief Krimmel's motion to dismiss, he notes that he was not the chief of the Lower Southampton Township Police Department at the time of this incident. Rather, he claims that he was a detective and that he was not present at the scene. However, at this stage, Mr. McKay's allegations must be taken as true. Chief Krimmel may raise the defense of mistaken identity or lack of supervisory capacity and such at a later stage in the proceeding.

[4] The Third Circuit Court of Appeals has explained that "[i]f a police officer . . . fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (citations omitted). Mr. McKay—whose complaint is read liberally given his *pro se* status—sufficiently placed Chief Krimmel on notice of his failure to intervene claim when

9

As discussed *supra*, following the events alleged in the complaint, Mr. McKay pleaded guilty to: (1) two counts of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance; (2) one count of criminal use of a communication facility; (3) one count of intentionally possessing a controlled or counterfeit substance; and (4) one count of use or possession of drug paraphernalia. *See* Court of Common Pleas of Bucks County, No. CP-09-CR-0008249-2016, Docket Sheet. Mr. McKay was sentenced for these crimes and is currently incarcerated at S.C.I. Rockview. And although Mr. McKay filed a motion to withdraw his guilty plea, the Court of Common Pleas denied this motion in November 2017. *Id.* Thereafter, the Superior Court upheld the Court of Common Pleas' decision on appeal. *Id.* Thus, it is clear that Mr. McKay's guilty plea has not been vacated or otherwise invalidated or even called into question.

Consequently, the Court concludes that Mr. McKay's Fourth Amendment claims for unlawful search and false arrest against Chief Krimmel are *Heck*-barred. Like in *Keeling*, Mr. McKay claims that he was incarcerated as a result of the alleged unlawful search and false arrest underpinning his claims against Chief Krimmel. And like in *Usery* and *Rosembert*, nothing in the complaint suggests that additional evidence—collected outside of the unlawful search—exists. Rather, the contraband seized during the alleged unconstitutional search appears to be the only link between Mr. McKay and the crimes he pleaded guilty to. As such, through his unlawful search and false arrest claims, Mr. McKay seeks precisely what *Heck* bars, "an invalidation of his

---

he alleged that Officers Grayo and Gansky threw him to the ground and conducted an unauthorized body cavity search, and that Chief Krimmel supervised the scene, authorized and approved of police misconduct, and could have prevented the violations of his constitutional rights.

conviction." *Usery*, 2017 U.S. Dist. LEXIS 35325, at *18–19. Accordingly, the Court will dismiss Mr. McKay's unlawful search and false arrest claims against Chief Krimmel.[5]

However, Mr. McKay's excessive force claims against the non-moving defendants—and by connection his failure to intervene claim against Chief Krimmel—do not threaten the validity of his guilty plea. *See Nelson*, 109 F.3d at 145–46 (holding that *Heck* did not bar a plaintiff's excessive force claim). Therefore, the Court will not dismiss Mr. McKay's failure to intervene claim against Chief Krimmel. The Court will grant Chief Krimmel's motion to dismiss in part and deny it in part and will deem all of Mr. McKay's motions construed as responses in opposition to Chief Krimmel's motion to dismiss (Doc. Nos. 31, 46, and 49) as moot.

## III. Mr. McKay's Motion to Withdraw from Suspense and to Proceed *Pro Se*

Finally, the Court will grant Mr. McKay's "Motion to Withdraw from Suspense, & to Proceed Pro Se." This case has been on the Prisoner Civil Rights Panel since June 4, 2018. No attorney has volunteered to take Mr. McKay's case. In his motion, Mr. McKay indicates that he wishes to proceed without counsel and on his own behalf. He also asks that his case be taken out of suspense. Therefore, the Court will remove this case from suspense, remove it from consideration by the Prisoner Civil Rights Panel, and will require the defendants to respond to Mr. McKay's complaint by March 29, 2019.

---

[5] These claims will be dismissed without prejudice to Mr. McKay's right to refile if his conviction should be overturned on appeal or otherwise invalidated. *See Brown v. City of Philadelphia*, 339 Fed. App'x 143, 145–146 (3d. Cir. 2009) ("[W]hen a claim is dismissed under *Heck*, the dismissal should be without prejudice.") (citation omitted).

**CONCLUSION**

For the foregoing reasons, the Court will deny Mr. McKay's requests for default judgment, grant Chief Krimmel's motion to dismiss in part and deny it in part, and grant Mr. McKay's motion to withdraw from suspense and to proceed *pro se*. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE