IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK MCKAY,** *Plaintiff* | : : : | **CIVIL ACTION** |
| v. | : : | |
| **TED KRIMMEL** *et al.*, *Defendants* | : : : | **NO. 18-2112** |

## MEMORANDUM

PRATTER, J.                                                                                 March 24, 2020

*Pro se* plaintiff Mark McKay brings various federal and state law claims against Bensalem Township Police Officers Christopher Grayo and Joseph Gansky, Lower South Hampton Township Chief of Police Ted Krimmel, and Bucks County Chief Operating Officer Brian Hessenthaler for alleged wrongs arising out of a search and seizure conducted by Officers Grayo and Gansky.[1] Officers Grayo and Gansky move to dismiss Mr. McKay's amended complaint.

For the reasons that follow, the Court grants in part and denies in part the motion to dismiss.

### BACKGROUND & PROCEDURAL HISTORY

In his original complaint, Mr. McKay claimed that Officers Grayo and Gansky threw him to the ground in his front yard, searched his house without a warrant, inappropriately touched his "private area" while conducting an unauthorized body cavity search, arrested him, and unlawfully held him for hours without filing an affidavit of probable cause. Compl. 14. Mr. McKay also claimed that Officers Grayo and Gansky charged him with crimes he did not commit and

---

[1] After the incidents alleged in Mr. McKay's complaint took place, Mr. McKay pleaded guilty to (1) two counts of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance; (2) one count of criminal use of a communication facility; (3) one count of intentionally possessing a controlled or counterfeit substance; and (4) one count of use or possession of drug paraphernalia.

1

threatened that if he did not plead guilty, they would charge his son for crimes relating to the drug paraphernalia found at the scene.

Mr. McKay also alleged that Chief Krimmel was responsible for supervising the scene, authorized and approved of the officers' misconduct, could have prevented the violations of his constitutional rights, and used illegal methods of obtaining and arresting him. Finally, Mr. McKay claimed that Mr. Hessenthaler knew that unconstitutional acts were occurring and failed to train employees properly. Mr. McKay alleged that these acts caused his incarceration, the loss of his property, and that both he and his son suffer from depression and anxiety as a result.

Upon consideration of Chief Krimmel's motion to dismiss and a series of motions from Mr. McKay, the Court dismissed Mr. McKay's Fourth Amendment claims for unlawful search and false arrest against Chief Krimmel because they were barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Finding that Mr. McKay's failure-to-intervene claim was not *Heck*-barred, the Court did not dismiss that claim because Mr. McKay had sufficiently placed Chief Krimmel on notice of the claim.

After the Court granted in part and denied in part Chief Krimmel's motion to dismiss, Mr. McKay filed a motion for leave to amend the complaint. The motion was unopposed and was granted by the Court. In his amended complaint, Mr. McKay alleges essentially the same facts and pleads eight counts. Count I alleges failure to intervene against Chief Krimmel. Count II alleges "Cruel and Unusual Punishment – Intrusive Body Search – Sexual Harassment/Failure to Protect," and Count III alleges "Color of State Law – Negligence." However, based on the facts alleged and Mr. McKay's arguments, the Court concludes that Mr. McKay asserts what can best be identified as Section 1983 claims for unlawful search, false arrest, and excessive force under the Fourth Amendment against Officers Grayo and Gansky. Count IV and Count V assert claims

2

for negligent infliction of emotional distress and intentional infliction of emotional distress, respectively, also against Officers Grayo and Gansky. Count VI alleges "Color of State Law – *Respondeat Superior*," which the Court concludes asserts a Section 1983 claim for supervisory liability against Mr. Hassenthaler. Mr. McKay seeks $250,000 in damages per defendant for a total of $1,000,000, as well as damages in excess of $5,000,000 "based upon the color of state law negligence claims." Am. Compl. 16.

Mr. Hessenthaler filed a motion to dismiss Mr. McKay's amended complaint. Officers Grayo and Gansky later filed a separate motion to dismiss. The Court ordered Mr. McKay to respond to the pending motions to dismiss, after which Mr. McKay filed an opposition to the officers' motion to dismiss only. In his opposition, Mr. McKay voluntarily withdrew all claims against Chief Krimmel and Mr. Hessenthaler.

## LEGAL STANDARD

At the outset, the Court notes that Mr. McKay's *pro se* pleading should be "liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola,* 839 F. Supp. 332, 334 (E.D. Pa. 1993). To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint,

3

exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions. *Id.* at 1197. Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality, even given the indulgent nature of the Court's review of *pro se* pleadings. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

In their motion to dismiss, Officers Grayo and Gansky first argue that Mr. McKay's Fourth Amendment claims for unlawful search and false arrest are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Second, the officers argue that any claim Mr. McKay asserts for excessive force under the Fourth Amendment must also be dismissed because the only force Mr. McKay describes occurred incident to a lawful arrest. Third, the officers argue that any of Mr. McKay's claims under the Eighth Amendment must be dismissed

4

because the Eighth Amendment only applies after there has been a formal adjudication of guilt. Finally, the officers assert that the remaining state law claims against them must be dismissed for failure to state a claim.

In his opposition to the motion to dismiss, Mr. McKay "concedes . . . that violations other than the Excessive Force and Negligence claims are barred at this time." Opp'n to Mot. to Dismiss 2. However, it is unclear from the arguments in Mr. McKay's brief exactly which claims he is voluntarily abandoning as to Officers Grayo and Gansky. Therefore, out of an abundance of caution, the Court will address each of Mr. McKay's claims in turn.

### I. Unlawful Search and False Arrest Claims

The Court already had the opportunity to evaluate whether Mr. McKay's Fourth Amendment claims for unlawful search and false arrest were *Heck*-barred in its analysis of Chief Krimmel's earlier motion to dismiss. For the same reasons detailed in its March 7, 2019 Memorandum, the Court finds that Mr. McKay's Fourth Amendment claims for unlawful search and false arrest asserted against Officers Grayo and Gansky are also *Heck*-barred. Therefore, the Court will dismiss these claims.

However, as the Court also noted in its prior Memorandum, Mr. McKay's excessive force claims do not threaten the validity of his guilty plea and are accordingly not *Heck*-barred. *See Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997) (holding that *Heck* did not bar a plaintiff's excessive force claim). Therefore, the Court must evaluate whether Mr. McKay has sufficiently stated a claim for excessive force.

### II. Excessive Force Claim

"Use of excessive force by a state official effectuating a search or seizure violates the Fourth Amendment." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 (3d Cir. 2005). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must

show that a 'seizure' occurred and that it was unreasonable." *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)) (internal quotation marks omitted). Here, Officers Grayo and Gansky do not dispute that Mr. McKay's arrest constitutes a seizure. "Accordingly, the only question is whether the alleged use of force during that seizure was unreasonable." *Ansell v. Ross Twp, Penn.*, 419 F. App'x 209, 212 (3d Cir. 2011).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). The Supreme Court has provided a series of considerations, called the *Graham* factors, to guide courts in assessing the reasonableness of the use of force, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). "The Court of Appeals for the Third Circuit has provided additional relevant considerations—the so-called 'Sharrar factors'—such as 'the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" *Ansell*, 419 F. App'x at 213 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

Under this guidance, whether an officer's use of force was reasonable is an inherently fact-based inquiry. Taking the facts in Mr. McKay's amended complaint as true, Officers Grayo and Gansky threw Mr. McKay to the ground outside of his home, "placed him in handcuffs at gun point," and searched Mr. McKay's pockets. Am. Compl. ¶ 22. They also "inappropriately touched his 'private area' while conducting an unauthorized 'intrusive' body cavity search." *Id.* at ¶ 16.

The officers argue that their actions were reasonable because Mr. McKay was outside of his residence and needed to be put into custody as quickly as possible. They also assert that Mr. McKay needed to be searched to ensure he did not have a weapon or other dangerous item prior to being placed into custody. Although these may be legitimate considerations, it appears that Mr. McKay had already been handcuffed, he was wanted for drug-related charges, and there is nothing in the amended complaint to suggest that Mr. McKay posed an immediate threat to the safety of the officers or public, was actively resisting arrest or fleeing, or may have been armed. Reading Mr. McKay's *pro se* amended complaint liberally, the Court finds that Mr. McKay has pleaded sufficient facts to place Officers Grayo and Gansky on notice of his excessive force claim and this inherently fact-based claim should proceed at least to discovery.

### III. Eighth Amendment Claims

Officers Grayo and Gansky assert that Mr. McKay's claims under the Eighth Amendment in Counts I and II must be dismissed because the Eighth Amendment only applies after there has been a formal adjudication of guilt.

It is correct that the Eighth Amendment is inapplicable to Mr. McKay's claims because all of the acts alleged occurred prior to his guilty plea. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'") (alteration in original) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). However, the Court will not dismiss Counts I and II on that basis because such a strict reading of Mr. McKay's claims would be inappropriate in light of his *pro se* status. Because Mr. McKay has filed his amended complaint *pro se*, the Court "must liberally construe his pleadings, and . . . apply the applicable law, irrespective of whether [he] has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369

(3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). In other words, Mr. McKay's reference to the Eighth Amendment was uncounseled and perhaps was unintended. Here, Counts I and II in conjunction with Count III can be read to assert claims under the Fourth Amendment for unlawful search, false arrest, and excessive force against Officers Grayo and Gansky, and a related claim for failure to intervene against Chief Krimmel. Mr. McKay has voluntarily withdrawn his claim against Chief Krimmel, and the Court has explained that Mr. McKay's unlawful search and false arrest claims are *Heck*-barred but his excessive force claim survives the pending motion to dismiss.

## IV.   Infliction of Emotional Distress Claims

Finally, Officers Grayo and Gansky seek dismissal of Mr. McKay's negligent infliction of emotional distress and intentional infliction of emotional distress claims. They argue in part that they cannot be held liable for intentional infliction of emotional distress because "section 8542(a) of the Pennsylvania Judicial Code permits liability to be imposed against local agencies and their employees for negligent acts only" and "specifically excludes acts that constitute 'a crime, actual fraud, actual malice or willful misconduct.'" Mot. to Dismiss 11 (citing *Zernhelt v. Lehigh Cty. Office of Children & Youth Servs.*, 659 A.2d 89, 90 (Pa. Commw. Ct. 1995)).

However, this is not quite the proper reading of the statute. Section 8542(a) serves to limit local agency liability for negligent acts to nine specified categories listed in Section 8542(b). If an act does not fall into one of these enumerated categories, a local agency and its employees are

immune from liability for that negligent act.[2] Therefore, Officers Grayo and Gansky are immune from Mr. McKay's negligent infliction of emotional distress claims.[3]

Section 8550, however, excludes from immunity acts constituting "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550. Intentional infliction of emotional distress necessarily implies intentional, i.e. willful, conduct, and therefore the officers are not immune from Mr. McKay's intentional infliction of emotional distress claims.

"An action for intentional infliction of emotional distress [] requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Kornegey v. City of Phila.*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018) (citations omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society . . . ." *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987) (internal quotation marks omitted). "Described another way, 'it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for

---

[2] Employees of local agencies generally share the same immunity as the local agency itself. *See* 42 PA. CONS. STAT. § 8545.

[3] The Court notes that one of the enumerated categories of negligent conduct for which a local agency and its employees may be held liable is "Sexual abuse. — Conduct which constitutes an offense enumerated under section 5551(7) . . . if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." 42 PA. CONS. STAT. § 8542(b)(9). Here, Mr. McKay alleges that the officers "inappropriately touched his 'private area' while conducting an unauthorized 'intrusive' body cavity search." Am. Compl. ¶ 16. Besides stating in a conclusory fashion that these acts constituted sexual assault, Mr. McKay does not allege any additional facts that lead to such a conclusion.
Furthermore, even if the officers did not enjoy immunity, Mr. McKay alleges that the officers acted "*with the intention* of sexually assaulting Mr. McKay." Am. Compl. ¶ 34 (emphasis added). Mr. McKay's allegations describe intentional acts, not negligent ones. Mr. McKay's negligent infliction of emotional distress allegations do not fall under the exceptions to local agency immunity for negligent acts, and they do not allege negligent conduct. Therefore, they are dismissed.

another tort.'" *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citations omitted). "The Eastern District of Pennsylvania has consistently held that a determination of 'extreme and outrageous' behavior is a preliminary matter for the court to decide." *Ferrara v. Delaware Cty.*, No. 18-05157, 2019 WL 2568117, at *4 (E.D. Pa. June 21, 2019) (listing cases).

Here, Mr. McKay alleges that having his genital area touched and searched caused him, as "a strongly religious man," to "endure 'an abomination' before God" that forced him to repent and fall before the throne of God. Am. Compl. ¶¶ 36–37. He claims that the officers' actions caused him "serious mental anguish and emotional disturbance" and placed him in immediate danger of bodily harm.[4] *Id.* In their motion to dismiss, Officers Grayo and Gansky list a series of cases in which extreme and outrageous behavior was found and argue that, because their alleged conduct "took place during the course of an arrest for charges for which Plaintiff has pled guilty," their conduct "in no way constituted intentional infliction of emotional distress." Mot. to Dismiss 11.

Even reading Mr. McKay's *pro se* complaint liberally, and recognizing that cavity searches may be extremely invasive or humiliating in nature, the Court concludes that Mr. McKay's allegations fail to state a claim for intentional infliction of emotional distress. Mr. McKay alleges that he was subjected to a cavity search, but he does not allege facts demonstrating that the search was conducted in a way intended to upset him, that the officers conducted the search in an outrageous manner, or that any other acts took place that would render the search utterly intolerable or beyond all bounds of decency or neutral, authorized means or methods. Rather, Mr. McKay's alleged emotional distress stemmed from the fact that he was touched by male officers during the search. However, besides giving the search a conclusory label of sexual assault, Mr. McKay

---

[4] Mr. McKay also alleges that his son witnessed the alleged search and became so psychologically disturbed that he attempted to commit suicide shortly after the events in question. Mr. McKay's son, however, is not a party to this action.

10

alleges no facts to suggest that the search was conducted in a sexual manner or that any sexual acts took place.

Mr. McKay's personal beliefs may dictate his own response to the alleged cavity search, but they do not dictate the Court's analysis. The Court must determine whether the search in question was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek*, 531 A.2d at 1125 (internal quotation marks omitted). The Court concludes that as factually alleged it was not. *Contra Ferrara*, 2019 WL 2568117, at *1, *4 (finding that the plaintiff had alleged sufficient facts to state a claim for intentional infliction of emotional distress where, during a strip search, police officer made derogatory statements regarding the plaintiff's sexual orientation and struck the plaintiff in the face multiple times without provocation, causing extensive facial injuries that required immediate and future medical attention). Accordingly, Mr. McKay's intentional infliction of emotional distress claims are dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss of Officers Grayo and Gansky. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

11