IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK MCKAY,<br>      *Plaintiff* | :<br>:   CIVIL ACTION<br>: |
| v. | :<br>: |
| DIANE GIBBONS, *et al.*,<br>      *Defendant* | :   No. 18-2112<br>: |

## MEMORANDUM

PRATTER, J.                                                                                     JANUARY 21, 2022

A plaintiff wishing to bring a claim against a police officer must establish the personal involvement of that officer. Simply alleging that two or more officers must have been involved because they were at the scene is not sufficient to support a claim. Because Mr. McKay has not met that requirement, the Court grants summary judgment as to Mr. McKay's remaining claim against the last two defendants in this case.

### BACKGROUND

On October 18, 2016, members of the Special Investigations Unit of the Bensalem Police Department executed a search warrant at Mr. McKay's residence. While outside Mr. McKay's residence preparing to execute the warrant, Bensalem officers encountered Mr. McKay in the yard. The officers detained Mr. McKay before executing the search warrant. Later that same day, Mr. McKay was arrested.

Following these events, Mr. McKay filed suit under 42 U.S.C. § 1983, alleging various claims against multiple defendants under the Fourth Amendment and Eighth Amendment, as well as state law theories of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and vicarious liability. The Court dismissed all but Mr. McKay's claim for

1

excessive force under the Fourth Amendment against Officers Grayo and Gansky. *See* Doc. No. 77, at 7–8. As relevant to his excessive force claim, Mr. McKay alleges that Officers Grayo and Gansky "threw" him "to the ground, placed him in handcuffs at gun point, and brought him to his feet." Doc. No. 59 ¶ 22. Officers Grayo and Gansky filed a motion for summary judgment on this sole remaining claim for excessive force, and Mr. McKay filed a response, leaving the matter ripe for the Court's resolution.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if "might affect the outcome of the suit under the governing law." *Id.*

On a motion for summary judgment, the Court views the evidence presented in the light most favorable to the non-moving party. *Id.* at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## DISCUSSION

In addressing Officers Gansky's and Grayo's previous motion to dismiss, the Court declined to dismiss Mr. McKay's claim for excessive force under the Fourth Amendment. However, the Court did not explicitly address whether Mr. McKay's allegations related to the intrusive search of his person also survived the officers' motion to dismiss. Mr. McKay alleges that one of the officers "unlawfully entered Mr. McKay's underwear and searched around his testicles." Doc. No. 59 ¶ 22. Construing his *pro se* pleadings liberally, as the Court must,

2

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court will also address Mr. McKay's claim under this theory. Plus, Officers Grayo's and Gansky's motion for summary judgment also addresses both claims. Thus the Court will briefly address both claims, starting with the excessive force claim.

### I. Mr. McKay Has Not Alleged Sufficient Personal Involvement by Either Officer Gransky or Officer Grayo as Required at the Summary Judgment Stage

Mr. McKay alleges that Officers Grayo and Gansky "threw" him "to the ground, placed him in handcuffs at gun point, and brought him to his feet." Doc. No. 59 ¶ 22. Mr. McKay initially alleged this claim under the Eighth Amendment, but the Court construed it as a claim for excessive force under the Fourth Amendment and allowed it to proceed after Officers Gansky's and Grayo's motion to dismiss. *See* Doc. No. 77, at 7–8. Officers Grayo and Gansky put forth four arguments why the court should grant summary judgment. Three of the arguments do not advance the officers' motion. But the Court grants the motion for summary judgment based on the officers' fourth and final argument.

First, the officers argue that their detention of Mr. McKay was reasonable and that a detention carries with it the right to use a reasonable degree of force. The officers argue that Mr. McKay's detention, a seizure under the Fourth Amendment, was reasonable. But Mr. McKay disputes the *manner* in which he was detained, not the *fact* that he was detained. And there is no legal dispute here. When officers are executing a search warrant, they may detain occupants of the premises being searched. *Muehler v. Mena*, 544 U.S. 93, 98 (2005). To the extent this is the officers' argument, it is irrelevant. To the extent that the officers are arguing that they could place him in handcuffs, they are correct. The Supreme Court has explicitly explained that "the need to detain multiple occupants" while executing a search warrant "ma[kes] the use of handcuffs all the more reasonable." *Id.* at 100. The officers noted that, at the time of their interaction with Mr.

3

McKay, two people were present at Mr. McKay's residence. Mr. McKay does not contest any of these facts. Thus, even to the extent the officers' argument on this point relates to the use of handcuffs, this argument only marginally at best advances their summary judgment motion as to the excessive force claim.

Next, the officers appear to argue that the location of the search alters the type of force they are allowed to use. The officers argue that because the search was "in a residential neighborhood, it was desirable to have the search go as orderly as possible." Doc. No. 128-2, at 7. Not surprisingly, the officers cite no legal authority for this argument. The Court also notes that, quite simply, it would be "desirable" to have a search "go as orderly as possible" no matter where it is taking place. So this defense argument adds nothing.

Third, the officers argue that the limited duration of the event makes it objectively reasonable. But again, they cite no legal authority for this argument. A plaintiff can make an excessive force claim based on being shot, which only takes a fraction of second. *See, e.g., Tennessee v. Garner*, 471 U.S. 1 (1985). A plaintiff can also make an excessive force claim based on an extended physical encounter with police officers. *See, e.g., Graham v. Connor*, 490 U.S. 386 (1989). While the length of an encounter is certainly one factor under the totality of the circumstances analysis, it alone is not dispositive. So this argument adds little or nothing.

Finally, the officers argue that Mr. McKay has failed to specify the personal involvement of both Officer Gansky and Officer Grayo sufficient to survive summary judgment. Mr. McKay disagrees. Doc. No. 130 ¶ 15. The Court agrees with the officers.

The Third Circuit Court of Appeals has stated clearly that "a 'plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial.'"

4

*Williams v. City of York, Pa.*, 967 F.3d 252, 261 (3d Cir. 2020) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018)). The *Jutrowski* court explained that this rule originates in § 1983's connection to principles of tort liability, under which there must be a connection between the act or omission of a defendant and the damage to a plaintiff. *Jutrowski*, 904 F.3d at 289–90. The *Jutrowski* court also canvassed a "trilogy" of cases in which a plaintiff alleged constitutional violations against a group of officers but had not identified which of those officers had actually committed the alleged violation, meaning the claim could not survive summary judgment. *Id.* at 290–91.

Here, even after discovery, Mr. McKay's allegations suffer from the same fatal defect. While Mr. McKay's identification of Officers Gansky and Grayo in his amended complaint was sufficient to survive the officers' motion to dismiss, that does not mean it is sufficient to survive summary judgment. Mr. McKay does not identify which officer is the one who allegedly threw him to the ground, which is the basis of his excessive force claim. Instead, Mr. McKay testified that he "was attacked on the side of the house by a group of cops with a dog."[1] Doc. No. 128-6, Def.'s Ex. 6, at 21:8–9. But, as the cases just cited make clear, merely alleging the unconstitutional conduct of a group of officers is not sufficient at the summary judgment stage.

Furthermore, Mr. McKay does not allege which action was taken by Officer Grayo or by Officer Gansky. When asked to clarify which officer or officers threw him to the ground during his deposition, Mr. McKay repeatedly responded, "I don't know" and "I don't want to point a finger to exactly one of the two." Doc. No. 128-6. Def.'s Ex. 6, at 31:16–32:12. Mr. McKay seems to rely on a process of elimination, explaining that Grayo and Gansky acted separately—one "threw" him "to the ground, placed him in handcuffs at gun point, and brought him to his feet"

---

[1] Mr. McKay clarified that he had no contact with the dog. Doc. No. 128-6, Def.'s Ex. 6, at 24:3–11.

5

while the other was responsible for the pat down. *See id.* at 32:16–18. Mr. McKay attempted to identify them by their physical attributes, seeming to classify Officer Gansky as "the shorter stocky one", *id.* at 32:3, and Officer Grayo as the "tall and slim" one, *id.* at 79:24. Based on that distinction, he alleges that the "tall, slim one" was the one engaging in the pat down, *id.* at 79:20–21, and, by process of elimination, seems to implicate the other in the detainment and handcuffing. But Mr. McKay could not even maintain that distinction, conceding that he did not know whether the "tall and slim" officer was either Grayo or Gansky. *Id.* at 79:24–80:2. The police reports, also included in discovery, provide no further clarity. They note only that "McKay was taken into custody" and that "two adult males were secured." [2] *See* Doc. No. 128-4, Def.'s Ex. B, at 6, 7. Thus Mr. McKay has provided no evidence of either Officer Gansky's or Officer Grayo's personal involvement in his allegation of excessive force.

Mr. McKay has alleged either that a group acted to throw him to the ground or that one of either Officer Gansky or Officer Grayo did so. But, under either theory, his allegation is insufficient to survive summary judgment. At this stage, he must allege the personal involvement of an officer in the claimed constitutional violation. *Williams*, 967 F.3d at 261. He has not done so. Therefore, the Court grants the Officers Grayo's and Gansky's motion for summary judgment on Mr. McKay's excessive force claim.

## II.   Mr. McKay Has Not Alleged an Intrusive Body Cavity Search

In his amended complaint, Mr. McKay also alleges that Officer Grayo or Officer Gansky "unlawfully entered [his] underwear and searched around his testicles." Doc. No. 59 ¶¶ 22, 27. He cites to portions of the Bible and claims that the officers forced him to "endu[r]e 'an abomination'

---

[2] The Court notes the difficulty caused by the officers' repeated use of passive voice. By using passive voice, the officers' reports contain no subject that is taking any action, an important aspect of the case at issue. Instead, a subject is being acted upon. This approach does not aid the Court in evaluating evidence or the motion. Rather it suggests the possibility of the defense effort to avoid accuracy.

before God" by "allowing another man to forcibly 'uncover his nakedness.'" *Id.* ¶ 28. In their motion for summary judgment, Officers Grayo and Gansky deny that they searched inside of his boxer briefs and argue that, even if they did search within his boxers, it was reasonable.

As noted above, officers may detain occupants of a premises being searched. *Muehler*, 544 U.S. at 98. When police detain a person for the purposes of executing a search warrant, they may search that person under a few theories. First, they may search the person if the person is also named in the search warrant. *See Ybarra v. Illinois*, 444 U.S. 85, 90 (1979). Second, police may conduct a limited search the person, a "frisk," if they articulate reasonable suspicion that the individual may be "armed and presently dangerous" under the doctrine of *Terry v. Ohio*, 392 U.S. 1, 30 (1968). An officer may only conduct a more intrusive search, including a body cavity search, if he or she articulates "at minimum, reasonable suspicion of weapons or contraband." *United States v. Parker*, 458 F. Supp. 260, 265 (M.D. Pa. 2020) (noting that neither the Supreme Court nor the Third Circuit Court of Appeals have directly addressed the constitutionality of strip searches incident to an arrest).

Here, Mr. McKay has all but recanted his initial allegation that any strip search occurred. In his deposition testimony, he explained that he was wearing a "pair of Nike sweat shorts. . . with a drawstring" and that "the string. . . came undone and [his] shorts fell." Doc. No. 128-6, Def.'s Ex. D, at 27:1–5. Mr. McKay confirmed that the officers did not pull his shorts down but that "[his shorts] must have gotten loose" after the officers put him in handcuffs on the ground and retrieved Mr. McKay's cell phone from his pocket. *Id.* at 29:19–21. He further confirmed that, at the time of the search, he was still wearing boxer briefs, a t-shirt, and his shoes, *id.* at 31:1–3, and that the officers were not explicitly searching in or around his testicles but that "it was just searching beside my leg in between," *id.* at 32:11–12. Finally, he verified that he was never asked to bend over or

7

remove clothing, *id.* at 33:7–15, was not asked to spread his legs, and that the officers never searched any body cavity, *id.* at 78:8–79:7. To summarize, the facts in the record show that after detaining Mr. McKay in his yard, officers patted him down while he remained partially clothed, did not remove any clothing, did not ask him to spread his legs or bend over, did not search any body cavities, did not expose any of Mr. McKay's private areas, and may have allegedly touched Mr. McKay's inner thigh and his testicles while patting down his legs. In other words, Mr. McKay does not allege that any strip search took place.

Even construing Mr. McKay's complaint liberally as alleging that the search of his person was unconstitutional more broadly, the Court has already addressed and dismissed that claim as barred by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). Doc. No. 52, at 6, 8–10; Doc. No. 77, at 5.

Thus, having resolved any and all claims related to the manner of Mr. McKay's detainment and arrest and the search of Mr. McKay's person, the Court grants Officers Gansky's and Grayo's motion for summary judgment in full.

## CONCLUSION

For the reasons stated herein, the Court grants Officers Grayo's and Gansky's motion for summary judgment. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE